PACIFIC NATIONAL BANK OF SEATTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74685.   Promulgated March 4, 1936.

*Emery F. Hess, Esq.*, and *H. L. Scott, C. P. A.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

### OPINION.

McMAHON: This is a proceeding for the redetermination of a deficiency in income tax for the year 1931 in the amount of $1,331.65.

The petitioner is a national bank organized under the laws of the United States, with its principal office in Seattle, Washington.

In 1931, the books of the petitioner were examined by a national bank examiner. Thereafter, under date of November 20, 1931, upon the report of such examiner dated September 8, 1931, and pursuant to his instructions, depreciation in the total amount of $11,209.08 on certain bonds was charged off "in accordance with instructions from the Comptroller", as follows:

| | |
|---|---:|
| Allegheny Corpn. 5's 1944 | $1,933.12 |
| Am. Rolling Mills 4½ 1933 | 393.75 |
| Bloedel Donovan Lbr. Mills 6 1933 | 60.33 |
| Phillips Pet. Corpn. 5¼ 1939 | 1,417.50 |
| Remington Rand Deb. 5½ 1947 | 2,513.75 |
| U. S. Rubber Co. 6's 1933 | 568.13 |
| Olympic Forest Products Co. 6 1933 | 562.50 |
| Asso. Telephone Utilities 5½ 1944 | 1,062.50 |
| Postal Tel. & Cable Co. 5's 1953 | 1,910.00 |
| Peoria & Eastern Ry. 4 1978 | 787.50 |

In its return for 1931 the petitioner claimed a loss deduction in the total amount of $11,209.08, representing "Depreciation Charge-off on Bonds in Compliance with the requirements of the Comptroller of the Currency", including the items above set forth. This deduction was disallowed by the respondent on the following grounds:

Write down of investment bonds not an allowable deduction. No showing of partial worthlessness has been made as required under the provisions of section 23 (j) of the Revenue Act of 1928.

Upon the foregoing facts, which we find and which are the only facts we can find upon the record, the only issue involved is whether

the respondent erred in disallowing a deduction for bad debts in the amount of $11,209.08 written off upon the books of the petitioner during 1931 pursuant to instructions of the national bank examiner.

The petitioner contends that it is entitled to a bad debt deduction under section 23 (j), Revenue Act of 1928,[1] and article 191 of Regulations 74.[2]

While the evidence shows that the amount of $11,209.08 was charged off on the books of petitioner, there is no evidence showing that the bonds in question were, in 1931, worthless to the extent claimed by petitioner or that the petitioner determined that the bonds involved herein were then worthless to that extent. The making of a charge off is not sufficient. The evidence discloses that the amount of $11,209.08 was charged off on the books upon direction of the bank examiner. There is no evidence as to the reasons or facts upon which the bank examiner's determination was based except that the examiner's report discloses his "estimated market value" of the bonds involved herein and the rating of the bonds as shown by Moody, Standard Statistics, Fitch, or Bond and Quotation Service. No evidence of default in interest or evidence of probable default in payment of principal at maturity was presented. There is evidence pertaining to quotations from the New York Stock and Curb Exchanges on some of these bonds and on common stock of some of the companies which issued these bonds, a statement of average prices for 1930 and 1931 of 60 unidentified bonds listed on the New York Stock Exchange, a statement showing sales of some of the bonds involved made by petitioner after 1931, and a statement showing the "Net Income after all Charges" for 1929, 1930, and 1931 of some of the companies involved, as shown by Moody's manuals, which discloses that some of the companies had deficits in earnings in 1931 and some in 1930 and 1931. This, without other evidence of default, receivership, or financial difficulties, is not sufficient to establish the worthlessness of the debts represented by such bonds to the extent claimed. The quotations merely reflect market prices and show the fluctuations thereof. No bad debt deduction is allow-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(j) *Bad Debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

[2] ART. 191. \* \* \* Where banks or other corporations which are subject to supervision by Federal authorities (or by State authorities maintaining substantially equivalent standards) in obedience to the specific orders, or in accordance with the general policy of such supervisory officers, charge off debts in whole or in part, such debts shall, in the absence of affirmative evidence clearly establishing the contrary, be presumed, for income tax purposes, to be worthless or recoverable only in part, as the case may be.

able merely upon a showing of market quotations. Fluctuations in market prices represent merely paper losses or gains depending on whether such quotations are below or above the cost basis. While some of the debtor companies may have had deficits in 1931 and also in 1930, this, without other evidence, is not sufficient to show that such debtor companies were in default in 1931, or that they would be unable to pay these obligations in full when due. They may have had ample resources to take care of all obligations in spite of a deficit in annual earnings or income.

In *Second National Bank of Philadelphia*, 33 B. T. A. 750, contentions similar to those made by the petitioner herein were fully considered and discussed by the Board, and that decision is controlling herein. In that case the Board found that a showing that certain bonds were, in the year there in question, in default as to interest, and the debtor was, as to each, in receivership, that the national bank examiner found also that the bonds were quoted on the market at a small value and directed that they be written down, and that in compliance with such direction a charge-off was made, in the absence of countervailing evidence by the Government, was sufficient to establish that the debts were, to the extent claimed, worthless. We have no such showing in the instant proceeding. However, as to certain other bonds, where there was no evidence of a default or receivership or any reason shown giving rise to a belief that they would not be paid at maturity in their entirety, a bad debt deduction to the extent of a charge-off directed by the national bank examiner was not allowed, although it was shown that some of the bonds became in default in the year following the year in question therein, and the bank examiner determined that the market value was substantially lower than the value at which they were carried on the books. Upon authority of that case we therefore hold that the direction of a national bank to charge off a portion of the book value of bonds depreciated in value is not sufficient to entitle the petitioner to a deduction of the amount so charged off under section 23 (j), Revenue Act of 1928, notwithstanding the provisions of article 191 of Regulations 74 to the effect that debts charged off in part by a bank, pursuant to the direction of a bank examiner, shall be presumed to be worthless to the extent charged off in the absence of affirmative evidence to the contrary. Since that case, a very recent case, is controlling, no useful purpose would be served by discussing the numerous authorities cited in petitioner's brief.

*Decision will be entered for the respondent.*